UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JACK FIRTH,

    Plaintiffs,

vs.

UNITED STATES OF AMERICA,

    Defendant.

Case No. 1:10cv723

Magistrate Judge Bowman

**MEMORANDUM OF OPINION AND ORDER**

Plaintiff filed the instant action on October 18, 2010, pursuant to the Federal Tort Claims Act (FTCA), alleging that he suffered permanent damage to his left ear when he underwent a hearing test conducted by the Veterans Administration Medical Center (VAMC), in Cincinnati, OH, on or about November 2, 2007. (Doc. 1). This civil action is now before the Court on Defendant the United States of America's motion for summary judgment (Docs. 31) and the parties' responsive memoranda. (Docs. 32, 34). The parties have consented to the exercise of jurisdiction by the Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 15).

    **I. Background and Facts**

Plaintiff is an honorably discharged veteran of the United States Army. (Doc. 31, Ex. 1, Firth dep., at 12). He testified that he served in both Germany and in the conflict that took place in Vietnam. In 2007, Plaintiff consulted with a Veterans Administration physician located in Clermont County, Ohio. *Id.*, at 28. He presented

several issues including cholesterol concerns, plantar fascitis and intermittent hearing loss. *Id.*, at 12, 28. With respect to his hearing loss, Plaintiff testified that his wife had complained that he would turn up the volume on their television too high. Plaintiff met with Audiologist Mary Kelly Bone, AuD. According to Plaintiff, his hearing test was the first one of the morning. (Firth dep., at 21). Plaintiff told Dr. Bone that he had hearing issues dating to his military service. (Doc. 31, Ex. 2, Bone Declaration, ¶ 4).

Dr. Bone conducted Plaintiff's hearing test using a Grason-Stadler 61 Audiometer[1], a device that allows the audiologist to subject the patient to various levels of sound stimuli to test the patient's hearing. (*Id.*, ¶ 5). A hearing test involves the patient being seated in a quiet booth wearing a pair of headsets that are attached to the audiometer which is located in another room. Though the room the patient is seated in is not completely soundproof, it is designed to minimize any external sounds extraneous to the test. (Exh. 3, Cromwell Dep., pp. 11-13). The audiologist outside the booth gives the patient certain stimuli, such as questions from the audiologist or various sounds, and he is asked to identify what he hears and when he hears it. *Id.*

According to Plaintiff, shortly after he was seated with the headset in place, he briefly was exposed to a loud "feedback" similar to one hears at concerts or other performances when a microphone is placed too closely to the amplifiers or speakers. (Firth Dep., pp. 22-23). He further stated that he said he felt some movement in his left

---

[1] Mark Cromwell, a technician employed by the provider of this device, Gordon Stowe and Associates, testified that the Grason-Stadler 61 (GS 61) is the most widely used audiometer in the United States. (Doc. 31, Ex. 3, Cromwell dep., pp. 8-9). Mr. Cromwell's duties include servicing and calibrating the VAMC's GS 61's twice a year. *Id.*, p. 7.

ear. *Id.*, pp. 23-24. Almost immediately after this happened, Dr. Bone's voice came over the head sets as she began to test his hearing. *Id.*, p. 24. Dr. Bone then asked Plaintiff if he could hear her questions and he was also exposed to various sounds. (*Id.,* pp. 24-25).

Plaintiff's hearing test indicated that on November 2, 2007, his hearing was within normal limits. (Bone Decl., ¶ 8). Plaintiff did not inform Dr. Bone of the feedback noise that he allegedly experienced. *Id.* ¶ 9. However, later that day, Plaintiff asserts that he started having ringing in his left ear and described a "sea shell" sound. (Firth dep., pp. 25-26). Plaintiff later contacted the VAMC and complained of his hearing issue. He attempted to obtain a follow up appointment in December of 2007 but was told that it would take approximately a month to get an appointment. (Doc. 1, p. 3).

Later hearing tests indicated that Plaintiff's hearing has suffered deterioration. (Doc. 1, Complaint, p. 3; Doc. 31, Ex. 4, Keith Declaration, at Ex. A, pp. 2-3). Notably, he had a hearing test with Ryan Mills of the VAMC that indicated hearing loss consistent with the fluctuating hearing patterns of Meniere's disease which is a condition caused by fluid build-up in the ear. (Bone Decl., ¶12). Other doctors also reported hearing loss in the left ear. Dr. Keriakes, an ENT specialist, examined Plaintiff in the winter of 2008. Dr. Keriakes determined that Plaintiff suffered from hearing damage that was unable to be corrected by hearing aids due to affected sound pitch. (Doc. 32 at 1). In May 2009, Plaintiff was also seen by Dr. Pensak, another ENT specialist. *Id.* at 2. Dr. Pensak indicated that Plaintiff's electrocochleography results

were grossly abnormal on the left side consistent with that of an endolympahtic hydrops (i.e. Meniere's disease.). (Doc. 31, Ex. 6 at 3).

In August 2010, Plaintiff requested review of his ontological and audio logic records by Dr. Pensak. (Doc. 32, Ex. 1). Upon review of Plaintiff's audiometric profiles and studies, Dr. Pensak provided an August 16, 2010 letter stating the following:

> The patient's audiometric profiles have revealed over the last 2 years period of time an asymmetric high frequently semsorineural hearing loss in the left ear. In contradistinction early audiograms reflected a low frequency patter only.
>
> The patient has not manifested with symptoms concomitant with that of clinically active endolymphatic hydrops.
>
> As regards to his claim that an audiologic trauma is the provocative cause for his hearing impairment this is certainly possible as acoustic trauma has been an identified cause for asymmetric hearing loss. All retrocochlear tests and MR scanning reveals no evidence of IAC or CPA angle pathology.

*Id.*

Additionally, in July 2012, in response to an internet inquiry relating to Plaintiff's hearing loss, William Hal Martin, Ph.D., a professor of Otolaryngology at Oregon Health and Science University provided an email stating, *inter alia*, that "[i]t is possible that a loud feedback noise could be generated by a device like an audiometer and that it could be loud enough to cause temporary or permanent loss." (Doc. 32, Ex. 1 at 12).

After Plaintiff complained of his hearing test, the VAMC contacted Gordon Stowe and Associates to have technician Mark Cromwell examine the Audiometer used to test Mr. Firth. (Doc. 31, Ex. 2, ¶ 13). Mr. Cromwell tested the machine and found no malfunction in the machine. (Doc. 31, Ex. 3, p. 16). He testified that the GS

4

61 was incapable of emitting a sound higher than 123 decibels, well below a noise level that would cause damage to a human ear. (*Id.*, p. 11; Ex. 2, Bone Decl., ¶ 11). Mr. Cromwell noted that the design of the machine prevents it from emitting loud noises when it is warming up. (Doc. 31, Ex. 3, Cromwell Dep., pp. 23-24, 31). He also testified that if the GS 61 had emitted noise loud enough to cause the harm Plaintiff complained of, the machine would have been damaged. (Cromwell Dep., p. 33). No such damage was found. (Cromwell Dep., pp. 16, 33). He also testified that he has been servicing these audiometers for over 20 years and he had never heard of any similar claim of hearing damage. (*Id.*, p. 32).

As noted above, Dr. Bone testified that Mr. Firth's hearing test was within normal ranges on November 2, 2007. (Doc. 31, Ex. 2, Bone Decl., ¶ 9). She further testified that if Mr. Firth had been exposed to a level of sound that would cause the amount of hearing loss he later experienced, he could not have had such test results. (*Id.*, ¶ 10). Dr. Keith, an expert retained by Defendant also found that if Plaintiff had been subjected to a sound level sufficient to cause long term hearing damage, his test immediately after said exposure would not have been normal. (Doc. 31, Ex. 4, Keith Decl., ¶ 3).

**II. Analysis**

**A. Summary Judgment Standard of Review**

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.

2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). It is the Plaintiff's burden to point out record evidence to support her claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

### B. Defendant is entitled to Judgment as a Matter of Law

The FTCA, subject to numerous exceptions, waives the sovereign immunity of the United States government and confers subject matter jurisdiction on the federal district courts to hear tort actions against the federal government for the negligence of its employees. Thus, FTCA authorizes suits against the government to recover damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

Congress restricted the FTCA to circumstances in which "a private individual [would be liable] under like circumstances." 28 U.S.C. § 2674. It provides the exclusive

remedy for tort actions against the federal government, its agencies and employees. *Ascot Dinner Theatre v. Small Business Admin.*, 887 F.2d 1024,1028 (10th Cir.1989).

"As a general rule, domestic liability on the part of the federal government under the Federal Tort Claims Act is determined in accordance with the law of the state where the event giving rise to liability occurred." *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995) (citing 28 U.S.C. §§ 1346(b) § 2674; *Friedman v. United States*, 927 F.2d 259, 261 (6th Cir.1991). This extends to claims of medical malpractice. *See Vance v. U.S.*, 90 F.3d 1145, 1148 (6th Cir.1996); *Sellers v. U.S.*, 870 F.2d 1098, 1101 (6th Cir.1989).

As the complained-of events in this case took place in Ohio, the Court must look to Ohio law. Unless a matter is within the comprehension of a layperson, Ohio law generally requires expert testimony to establish both a breach of the standard of care and causation. *Ramage v. Central Ohio Emergency Serv., Inc.*, 64 Ohio St. 3d 97 (Ohio, 1992); *Bruni v. Tatsumi*, 46 Ohio St. 2d 127 (Ohio, 1976). Failure to provide expert testimony that establishes a deviation from the required standard of care and establishes causation is fatal to the plaintiff's prima facie case of malpractice. *Id.*

Here, Plaintiff has failed to provide any expert testimony in support of his claims and/or evidence or expert testimony to contradict the testimony of Mary Bone, Au.D. and Robert Keith, Ph. D. As detailed above, both Dr. Bone and Dr. Keith stated that it was impossible for Plaintiff to suffer a traumatic loss of hearing and then pass a hearing test immediately after the alleged trauma occurred. (Doc. 31, Ex. 3, pp. 2-3; Doc. 31, Ex. 5, p. 3).

Plaintiff's evidence, even if credited[2], establishes only that an audiometer could cause a loud noise that may result in hearing loss. He has not presented any evidence that the audiometer in question did in fact emit such a loud noise during Plaintiff's hearing test, and/or that such a noise was in fact the cause of his hearing loss. In light of the foregoing, although the Court has sympathy for Plaintiff's hearing loss, Plaintiff has not established a genuine issue for trial and Defendant is therefore entitled to judgment as a matter of law.

**III. Conclusion**

For these reasons, **IT IS THEREFORE ORDERED THAT** Defendant's motion for summary judgment (Doc. 31) is **GRANTED** and this case is therefore **TERMINATED** on the active docket of the Court.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[2] The documents submitted by Plaintiff were not attached to an affidavit or otherwise authenticated. Generally, unauthenticated documents may not be considered by the Court. *See Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir.1993). However, because the authenticity of the documents is not challenged, the Court has considered such documents in its analysis of Defendant's motion for summary judgment. See *Moore v. Baptist Mem'l Coll. of Health Sciences*, No. 08-231, 2010 WL 100551 (W.D. Tenn. Jan. 7, 2010).